May it please the court, my name is Patty Goldman. I represent LULAC and the other health and farm worker petitioners. This case challenges EPA's order denying our petition and leaving chlorpyrifos tolerances in place even though this pesticide causes reductions in IQ and learning disabilities like autism and attention deficit disorder at levels far below what EPA's tolerances allow. I will address two issues in the argument. The first is why EPA's action is contrary to the statute and the second is the appropriate remedy. Turning to the first argument, Congress adopted the standard in the Federal Food, Drug, and Cosmetic Act to make safety the exclusive factor. And that standard allows EPA to leave tolerances in effect only if the administrator finds the exposure safe. Here, EPA is leaving tolerances in effect without finding chlorpyrifos safe. That is in blatant violation of the statute. Okay, Ms. Goldman, what is it that triggers the obligation to leave something in effect? So the statute also uses other terms, it uses modify, it uses revoke, it uses establish. At least it seems to me that establish is what the administrator does in the first instance, which they did here in the early 2000s to establish the tolerance. And he can revoke a tolerance, he can modify a tolerance. If he doesn't do anything, that leaves it in effect. And since the administrator can do that on his own motion, he's doing that every day that he doesn't do one of the other things. So at what point does he have an obligation to review and certify that it is safe before he leaves it in effect? Well, the law provides that the public can file petitions to revoke tolerances. And that was made explicit for the first time in 1996. And in response to a petition to revoke tolerances, then the administrator will take actions. Okay, so let me stop you there. So does any petition that's filed trigger an obligation? So if you have a civics class, a 10th grade civics class that is studying something and wants to take on a project and decides to file a petition to have something revoked, does that trigger an obligation in the administrator to certify once again that it is safe? When EPA acts on a petition and leaves tolerances in effect, it has to have found the pesticide safe. Now, in response to most petitions, EPA may have a risk assessment that is current. And what it has often done is say the petition does not change those findings. Or a study that is presented doesn't change those findings. But EPA has always taken the position that when it denies a petition to revoke tolerances, it must do so by finding the pesticide safe. It may not do a whole new risk assessment. Here, our petition raised information about these exposures at very low levels, causing permanent brain damage to children. EPA reviewed that science, submitted it to a scientific advisory panel, and made unbroken findings beginning in 2008 that chlorpyrifos is causing these extreme types of harm to children at levels far below its tolerance levels. And then EPA did the next thing that the law requires. It conducted risk assessments. The law requires EPA to assess the risk in leaving tolerances in place. EPA's risk assessment from 2014 found exposures are unsafe for children drinking water. And then in 2016, it tried to find a level that would protect against this neurodevelopmental harm. And when it identified that level, it found that the exposures were unsafe every way children are exposed, and all ages of children. And this is in food and drinking water. Children ages 1 to 2 years old are exposed to 140 times safe levels. So EPA proposed to revoke the tolerances based on these risk assessments. And when it backed off in its order, it acknowledged these findings, but it provided reasons for departing from them. Its reason for departing from the 2014 risk assessment is that it prefers to address the drinking water contamination in registration review. But it can't do that under the statute. The statute requires EPA to give due consideration to the petition and any other available information. The risk assessments EPA conducted, whether it calls them for registration review or a petition, found these risks of concern. And then EPA provides a different reason for ignoring the 2016 risk assessment. But the errata that EPA filed late yesterday makes those reasons fall apart. EPA relied on a 2016 scientific advisory panel review as the reasons why it would not revoke the tolerances. Yet that review, admittedly now, on EPA's part, did not review the 2016 risk assessment. It reviewed an earlier proposal that EPA abandoned after the panel's review. So all of the scientific advisory panel statements about cord blood, about working memory, and about wanting access to raw data were in the context of that abandoned proposal. So EPA's reasons, even if it could depart from the risk assessments, which we don't believe it can, they have fallen apart. And the reason we don't think EPA can depart from the risk assessments is those are its findings. EPA said as much at ER 1134, 1135, and 1159. The risk assessments are the findings. The revocations are the regulatory action. And here EPA has couched those findings and it's unable to find the pesticide safe. It often speaks in those terms. It often has said our risk of concern levels are exceeded. But those risks of concern are the level of protection EPA has set. It's policy and it is a safety level. And I'd like to direct the court. If I could just ask a question. Yes, please. Direct a little bit of the science. As I understand it, while the Columbia and other studies show a correlation, a statistically significant correlation between the pesticide, even below tolerance, and various injuries to infants and the like, they are unable to explain why that should be so. And doesn't that at least raise the question that maybe something totally different is going on? If there's no plausible explanation for why this correlation exists, it's, you know, there are lots of correlations that are meaningless. Well, I think it's, the record has a lot of explanations. EPA explored many. The scientific advisory panel explored many. They're just not sure precisely what mechanism is causing these effects. But EPA has said the fact that they're not certain which mechanism causes the effects does not undermine the strength of the correlation. And that's at ER 231. That's also consistent with EPA policy, saying that EPA doesn't need to know the precise biological mechanism that is causing harm when the harm is as clear as it is here. And one related question I had. As I understand it, Columbia, which did one of the most important studies here, has refused to provide the raw data, repeatedly refused to provide the raw data to EPA. How is the EPA going to evaluate that study? Well, Your Honor, it's not accurate to say that Columbia has refused to provide the raw data. They have repeatedly agreed to allow EPA access in a secure enclave. They're unwilling to make data sets public that could identify the privacy of the participants in the study. But under EPA policy, the raw data are not necessary where privacy would be violated, and the agency is directed to use other means to validate a study, like peer review. And the Columbia, all of the papers were peer reviewed and published in peer reviewed journals, and like the scientific advisory panel, which reviewed the data and other studies. And then EPA found, based on all of the evidence, the weight of the evidence, which is, again, is its policy, that chlorpyrifos causes this harm. I see that I've used up more than my eight minutes, so let me yield. All right, let's give Mr. Brody a turn. Thank you, Your Honor. May it please the court, Frederick Brody of the New York Attorney General's Office for eight states and the District of Columbia. The states agree with LULAC that EPA's order is illegal because it leaves chlorpyrifos tolerances in effect without making a finding of safety. I won't repeat LULAC's argument, but instead will supplement it on the issue of remedies. And if I have a chance, I'll go back and circle back and discuss the meaning of the phrase, leave in effect. This court should remand with instructions to revoke the chlorpyrifos tolerances. The FFPCA's grant of jurisdiction to affirm or set aside an order places original jurisdiction in the circuit court. It does not say those remedies are exclusive. It does not strip the court of its other remedial powers. Here, merely setting aside the order would not afford complete relief. It would leave chlorpyrifos tolerances in effect without a safety, leaving us essentially in the same place we are today. Counsel, if we were to set aside, just simply set aside the order, trusting that EPA would then do the right thing, what options does EPA have if we set aside the order? How many times do we have to say something before EPA figures out that it's probably got to revoke it? Well, in the last five years, EPA has faced four ultimatums from courts, from this court. In 2015 and again in 2016, EPA found that it could not find chlorpyrifos safe. Then the administration changed. Yet in 2017, it still didn't find chlorpyrifos safe. And in 2019, same thing. EPA didn't find chlorpyrifos safe. Instead, it deferred things. It's been five years. Right. But if we told EPA that that order was either wrong on the law or arbitrary and capricious and sent it back with instructions, what options would EPA effectively have? Well, we're encouraging your honor to send it back with instructions to revoke the tolerances. So that way, EPA's option would be to revoke the tolerances. EPA, for the last 13 years, has been playing for time. And it's been delay after delay. So I think unless the court says revoke the tolerances because there is no foundation at the moment, there's no finding of safety. There's been no finding of safety for the last five years despite four court orders. So these tolerances should not still be in effect. The court can do that under the All Writs Act. It can issue all writs necessary or appropriate in aid of its jurisdiction. Here, the All Writs Act aids the court's jurisdiction to ensure that EPA's violation of the FFACA is corrected. Cases holding that courts have compelled agencies to take particular actions don't apply here. That's because the FFACA imposes a specific non-discretionary mandate. EPA may leave tolerances in effect only if it determines that they are safe and must revoke them if it finds they are not. And that is a good segue to the issue that I think is a central issue in EPA's brief. What does the phrase leave in effect mean? The phrase leave in effect is not limited to regulations as EPA contends. To begin with, EPA didn't advance that interpretation in its work. Judicial review of agency action should be limited to the grounds in the agency's decision. On the merits, the FFDCA identifies the safety rule as the statute's general rule. The statute nowhere limits the general rule to a particular type of action. In response to a petition, EPA has three choices. It can issue a proposed reg, it can issue a final reg, or it can issue an order denying the petition. When EPA denies a revocation petition, it leaves tolerances in effect. EPA's administrative precedent acknowledges that the safety rule applies to revocation petitions. Those rulings are cited on page 8 of our reply book. Let me ask a question that may show my lack of understanding of how this works. But going back to Judge Bybee's original question. So, if someone files a petition that gives no basis or just a very superficial basis for revoking a tolerance or the like, the EPA and denying that on the ground that you have in effect satisfied your burden of going forward, I'm putting it in a more legalistic way than the statute does, but this is just a conclusory or superficial statement, right? They don't have to say, oh, we've got to do our own study now, if it's that kind of a petition. That's right, and I would clarify Ms. Goldman's comments on this. And this is the example that Judge Bybee gave in the civics class. Obviously, there are pleading requirements. There are pleading requirements in the regs. There are pleading requirements in the statutes. But here, EPA published a notice of filing in October 2007. And under D3 of the statute, the notice of filing means the petition is sufficient to go forward. So, we're past that. I'll reserve the remainder of the time for Ms. Goldman's rebuttal and urge that the court direct EPA to revoke these tolerances. All right. Thank you. Thank you to the court, Mark Walters and the Department of Justice for responding to the United States Environmental Protection Agency. The issue before the court is whether Section 408B2A1 of the FFDCA always requires a new safety finding each and every time that EPA responds to a petition to revoke tolerance. Petitioners say that it does, and they suggest that all the court needs to know is the text of Subsection B2A1 itself. But as this court held in Kawashimi v. Holder with citation to many authorities, often a single phrase read in isolation may appear to... I'm sorry, counsel. I lost you for a second there. Can you repeat that last point? Yes. Yes, as the court held in Kawashimi, excuse me, Kawashima v. Holder, it is often the case that a single statutory provision considered in isolation will appear to... The consideration of the surrounding text indicates that Congress intended something narrow. In this case, there are multiple problems with the broad statutory construction advocated by petitioners. One is that it reads the second sentence of B2A1 out of the statute. Petitioners reason that every time EPA denies a petition to revoke, it logically and necessarily leaves a tolerance in place, and therefore the leave-in-place language of the first sentence of B2A1 applies. But if that is the case, the second sentence of B2A1, which directs the administrator to revoke tolerances upon a finding that they are unsafe, will never ever come into play. You can take a pencil and cross that out of the statute with absolutely no substantive change in effect because the administrator will never need to make that unsafe finding. Every time that a question arises about safety, as Judge Bybee pointed out, petitioners' construction would require the administrator to revoke based on that question without ever going to the next step. Why do you think that second sentence is only addressed to petitions? The administrator might do his or her own determination to determine that it's not safe, and then at that point they are mandated to modify or revoke it. It wouldn't have to be a situation where a petition was filed at all. Your Honor is correct. It's not only addressed to petitions, and I apologize if I gave the impression that that's what I was arguing. What I meant to say was that in the petition context, or in any other context, the administrator never has to get to the point of making the determination that it's unsafe. Under petitioner's construction, if the administrator identifies a question about safety, the administrator would need to initiate revocation proceedings. The second sentence, which specifically speaks to revocation, adds nothing substantive to the process. A second problem with petitioner's construction is that it would require EPA to resolve issues outside the scope of the petition that may exist because of some other process. For example, registration review that's ongoing. But it would allow petitioners to raise those at the objection stage, as they did in this case, even though they formed no part of the petition. Counsel, I want to make sure now that I'm following your argument. I understood the argument I thought from the briefs, that the phrase, leave in effect, only applies in the FIFRA review. Is that correct? Is that your reading of the statute? Not only in the FIFRA review. The leave in effect language would also apply to the review under 408Q that the Food Quality Protection Act required EPA to perform for all existing pesticide tolerances of 1996. That review was performed for chlorpyrifos, and the existing tolerances were certified as safe under B2A1 in 2006. And it is that existing safety finding on which the current tolerances are based. Every pesticide that is on the market today has been certified to be safe under B2A1, including chlorpyrifos. The petition to revoke process is a gap-filling ad hoc process that allows the administrator to revoke petitions before the completion of the registration review cycle that statutorily requires tolerances to be reaffirmed. So, Counsel, I've got a number of questions about the leave in effect language. I think that the administrator's reading is plausible, but that would make leave in effect sort of a term of art. And yet, it appears sort of randomly. It sometimes shows up on lists. Sometimes we have establish, modify, and revoke mentioned, but leave in effect is left off the list. Sometimes we mention all four things. But if I go over to FIFRA to look at FIFRA review, I don't find the phrase leave in effect in the FIFRA statute. I find maintain in effect mentioned once, and in effect mentioned a couple of times, but I couldn't find the phrase leave in effect. It's sort of no place to find, and it doesn't appear to be defined at all in FIFRA. I think that's right, Your Honor. But where the leave in effect language comes into play in the FIFRA registration review is that the phrase environmental effects in FIFRA is defined to include dietary effects under the safety standards in the FFDCA. So EPA has interpreted its obligations under those two statutes read together, and petitioners don't dispute this as requiring that at the end of a registration review, EPA has to make a safety finding under B21A before it leaves an existing tolerance in effect. So let me refine my question just a little bit. So again, I think that the department's reading of trying to integrate this, trying to read everything as a whole, makes some sense. The problem I'm having is that it would make a whole lot more sense had the phrase leave in effect been used in FIFRA, which I can't find at all. It only appears to be used here, and it's not a defined term. And since it doesn't appear to be a defined term, I have to infer a lot from your argument. Why shouldn't I just read the phrase leave in effect in its ordinary terms? In this case, if EPA denies this pending FIFRA review in 2022, it is leaving in effect the tolerance. So why shouldn't I just read it in that ordinary sense? Well, we set forth several examples in our brief, two of which I just spoke about. One, because it would necessarily remove the second sentence of B21 out of the statute. There's never going to be a time when the administrator needs to make a determination that a tolerance is unsafe, because for 100% of those instances, the administrator would be leaving in effect a potentially unsafe tolerance, even if it hasn't been finally decided and would have to revoke under that first sentence of B21A. The second sentence would have no substantive content whatsoever. It would just be redundant. A second reason, and it's an important one in this case, but potentially important in other cases, is that it would expand the petition process to be a fourth process under which, at least in some cases, EPA would have to perform a comprehensive review of pesticide tolerances, not limited to the claims in the petition to revoke, and it would allow petitioners to do as they did in this case to raise at the very end, objection stages, issues that were nowhere to be found in their petition. And it really doesn't matter how those other issues arose or how long ago they arose. Petitioner's construction of the statute wouldn't allow for those kinds of considerations. So while I understand that it would certainly be more clear and much easier to decide if FFRA had used the phrase, leave in effect, and if FFRA had defined or FFDCA had defined leave in effect, Congress didn't do that. But it did instruct EPA to incorporate the safety standards of the FFDCA in doing that. I'm having a little trouble understanding the contradiction or the ambiguity that you think is introduced by the second sentence. Because the first sentence is couched in may terms, and the second sentence in shall terms. So if the administrator determines that it's not safe, they must revoke the tolerance. If they determine that it is safe, under the first sentence, they can still revoke the tolerance. If, for example, they think it's a little, you know, we think it's safe, but we don't want to take the risk. So then under the first sentence, they would still have the right to revoke the tolerance if they wanted to. That's why it's may, and the second sentence is shall. So I'm not clear why you think those are two independently operable sentences. I have two responses to that, Your Honor. The first is, under petitioner's construction of the statute, if there is a question about safety, the administrator cannot reaffirm the safety finding, but is also not ready to make a finding or cannot make a finding that it's unsafe. Petitioner's construction would require revocation because the first sentence says the administrator may leave in place a tolerance upon a finding that it's determined to be safe. But what I'm posing is the situation which I've actually had in some cases not involving pesticides in my district court, where the determination based on all the science that the administrative agency has, they can't say that they think it's safe, but there's a lot of smoke, and they decide that nevertheless, we're going to ban it or lower the tolerance because the why not err on the side of caution. So that's the situation that I think the first sentence allows that is completely separate from the second sentence. I understand Your Honor's point, and I would say the case law has not interpreted the standard that way. And I'm sorry, I'm blanking on the name of the case, but there was a specific case cited in the briefs where EPA had originally had a zero tolerance level, and then new evidence showed that the safe level was somewhere between two numbers, but both of those numbers were higher than zero. But EPA said, well, you know, we'd really like to examine this some more, so we're going to leave it at that zero level, notwithstanding these two studies. And the court said, no, you can't do that. You may be able to say that the safe level is somewhere between those two numbers, but you can't just say keep it at zero, given this new information that shows that the lowest safe level is somewhat higher than zero. But my second point would be that even if Your Honor's analysis is correct, that's not the situation in this case. And there would still be the situation where under petitioner's construction, if there is a conclusion, or excuse me, a question about safety, EPA is always going to have to revoke. And EPA has never made a finding in this case, never, that the existing tolerances are not safe. And it is inaccurate to say that EPA has made a series of unbroken findings that exposure to levels below the current tolerances cause neurodevelopmental effects. While EPA doesn't dispute that chlorpyrifos can cause neurodevelopmental effects, the question has always been at what level, and what level of tolerances provide adequate protection. But it's important to note that in the petition to revoke itself, the petition made two asks of EPA, raised two issues about neurodevelopmental effects. Both of them ask EPA to quantitatively, that is numerically, use the data from human epidemiology studies and from animal studies to do two things. Change the regulatory endpoint to neurodevelopmental effects from the one that was used in 2006, and use that data, and in particular the human epidemiology data, to calculate a new safe exposure level that was lower than the one in 2006, or conclude that there was no safe exposure level. EPA considered these claims repeatedly from 2007 to 2014, and it twice convened its scientific advisory panel to discuss these very issues. And each and every time, EPA concluded and the scientific advisory panel agreed that evidence did not warrant changing the regulatory endpoint, and the epidemiology data was not robust enough to calculate a new safe dose. So when EPA published in 2014 its human health risk assessment, it specifically addressed these claims from the petition to revoke in that risk assessment. And it concluded not to change the regulatory endpoint, and it concluded that the epidemiology data was not robust enough to use directly to calculate a safe dose. EPA did calculate in the 2014 risk assessment a new safe dose for chlorpyrifos, and that new safe dose was higher than the one it calculated in 2006, and on which the 2006 safety finding was based. So based on its work from 2007 to 2014, EPA found nothing, said nothing, did nothing that required a reassessment of the 2006 safety finding. Council, I know your time is running short, so I'd like you to spend a minute or two addressing the question of remedy. If we find that EPA's denial was arbitrary and capricious, or that it violates the statutory command, or both, what are EPA's options if we simply just remand? I mean, this case has had a very long and tortured litigation history already, as you know. Yes, I understand. Well, if the court finds that EPA made a legal error and misconstrued its obligations under this statute, and that, in fact, contrary to EPA's position, it is required to make a safety finding under B2A1 or revoke the tolerances, then the court should remand to the agency, and it would have to do one of those two things, as the court directs. But I would like to point out that petitioners have failed to cite to the court even one case having remotely similar facts, in which the court held that an agency made a legal statutory construction error, and then remanded with directions as to how to resolve a factual issue on which there was conflicting evidence in the record. If the court determines that EPA's decision, while it affirms EPA's statutory construction, but affirms that the decision was nevertheless arbitrary and capricious, say, for example, because it did not sufficiently explain its determination to change its mind in 2017 from the preliminary conclusions it reached in 2016, then it would remand for EPA to either do that or initiate revocation proceedings. And with the brief time that I have left, unless there are any other questions, I would like to make one final point, and that has to do with EPA's request to review the data from the Columbia study. There's no EPA policy that says EPA must review the data and we don't contend otherwise, but there's no EPA policy that says EPA cannot request the data in an appropriate case. In this case, the Columbia researchers have admitted that there were data points omitted from their published results, and it appears that those changed the outcome. Given that, EPA reasonably concluded to request that data and review it itself rather than taking the researcher's word for it. I see that my time is up, so if there are no further questions, I will go back on mute. Thank you, counsel. I forgot to ask Ms. Goldman whether rebuttal time will be handled only by one counsel or whether you intended to split that as well. I will handle the rebuttal. All right. I would like to begin by responding to Judge Bybee's question about what are the options for EPA on remand. If EPA finalized the revocation order, the revocation would be effective in 180 days. Now, EPA could try to change that effective date. It and the amici hold out the possibility that the registrants and the agribusinesses could file objections to a revocation order, seek an evidentiary hearing. EPA might stay the revocation order during those proceedings, and then this delay may go on for many more years. Now, Mr. Walter says on this record there's conflicting evidence, and so there shouldn't be a remand. There is no conflicting evidence on the core point, and I would like to refer the court to ER 1291. This is in 2016. So EPA in these statements is equating the risks of concern found in the risk assessment with the safety requirement, and it said the risks in food, quote, exceed the reasonable certainty of no harm safety standard, and for drinking water, the risks exceed safe levels, and EPA has not identified uses that meet the safety standard. So while EPA is trying to say, oh, well, maybe it's just a question, when they went and assessed the risk, which is how EPA makes safety plans, it found risks of concern, which it equates with being unsafe, and it called it explicitly. There's uncertainties about the particular exposure level, but there are not uncertainties about the harm to children happening far below the tolerance. And I'd like to direct the court to findings by the scientific advisory panel and EPA in that regard at ER 787, 973, 979, 224, 228, 230, 1191, 1198, and 1226. And this spans a period of time from 2008 to 2016, where EPA has said the exposures happen below the tolerance, and it said regulating based on its prior effort is not sufficiently health protective, and that's at ER 1291. Ms. Golden, before your time is gone, I want to take you back to the leave in effect question in B2A, Romanette 1. So let me just frame it in this way. The FFDCA presumes that all pesticides are harmful, and therefore that no pesticides may be used. So we start from that presumption that the tolerance is zero for every pesticide. So that can be overcome by evidence, and then EPA may establish, if it finds, if it determines that something is safe, it may establish a tolerance. Now, given that EPA found that tolerance in 2006, the new default, it seems to me, is not a tolerance of zero established by the Act, but the tolerance established in 2006 when EPA conducted its regulatory proceedings. So if it's leaving in effect because it's insufficient evidence to persuade it to modify or revoke a tolerance, hasn't it, in effect, found that it is safe in 2006, and therefore isn't EPA entitled to leave in effect? In other words, my question is, can't EPA say the evidence is not sufficient to compel us to conclude that it is not safe, and therefore the default is now the safety tolerance that we established in 2006, and we're going to leave that in effect until we see sufficient evidence? Well, it's important to understand what EPA did in 2006. So it had conducted risk assessments in 2001 on chlorpyrifos, and then 2006 on all of the family of chemicals that act in the same way. And it found risks, and some of those risks were eliminated. And then it found that there were no unsafe exposures remaining. So it left those tolerances in effect. And so at that point, it had said, okay, based on these risk assessments, we have found the remaining uses safe. But that is not the default any longer. When EPA has conducted such extensive analysis of those studies, done a weight of evidence, finding that chlorpyrifos is unsafe in the two risk assessments that have happened since. And so this is a different kind of situation than a hypothetical petition. We have new risk assessments, new risks of concern, new findings. And they require EPA to act under both sentences. It can't leave the tolerances in effect because it cannot find the pesticides safe with these risks of concern. And it has found unsafe exposures in its risk assessments, so it must vote. And I appreciate the background. That seems to me to be a different kind of argument than arguing that it's compelled by virtue of a statute. That seems to me to be an arbitrary and capricious argument under the APA. That is, that the evidence is that EPA's finding to the contrary, or its non-finding to the contrary, defies the record, and therefore is arbitrary and capricious. It seems to be a very different prong under APA review from what you were arguing earlier. If a statute has a factor, and this is a safety factor, that is the exclusive factor, then that must guide how the agency makes decisions. And the plain language says EPA may leave a tolerance in effect only if it finds the tolerance safe. That's the plain language. And when it denies a petition to revoke a tolerance, denies objections, it's taking an action that can be challenged under the law, and that action is leaving the tolerances in effect. At the end of registration review, EPA will make findings. If it finds a pesticide unsafe, it shall revoke the tolerances. It can't sit on the piece of paper. It has to act. And so we have a prohibition on retaining tolerances without a safety factor, a finding, and we have a mandate. And I'd like to respond to the question, is there any case, we filed a 28-J letter of bringing to the court's attention Sierra Club versus EPA at 346-739-55. And that is... We've got that, counsel. Thank you. Unless my colleagues have any additional questions, we've taken you beyond your time. Let's move here. So thank you very much to both sides for your very helpful arguments today. The matter is submitted. Thank you. Thank you.
judges: Bybee, Nguyen, Rakoff